## Rains v. Louisville & N. R. Co.

(Decided June 8, 1934.)

STEPHENS & STEELY for appellant.

TYE, SILER, GILLIS & SILER and ASHBY M. WARREN for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The Louisville & Nashville Railroad Company sued and recovered from Neal Rains possession of a strip of land 25 feet wide and 889 feet long, and Rains has appealed.

In 1906 the Pine Mountain Railroad Company was preparing to construct a railroad along the Cumberland river. In procuring the right of way therefor they ac-

quired 8.05 acres of land from Sim Rains, which was a strip 125 feet wide and 889 feet long; 75 feet of this was west of the center line of the proposed road, and 50 feet was east of that center line. The house of Sim Rains then stood practically astride the center line of the proposed road, and the county road was then in what is now the right of way, and in addition to the sum of $650 paid Rains in cash, the railroad company agreed to move the fence from along the side of the public county road on the west side thereof further west and onto the outside right of way line, and further contracted at its own expense to move the dwelling house of the said Simeon Rains from its location at or near the track of its said railroad back onto the lands of the said Sim Rains.

At that time the railroad company contemplated relocating the county road and placing it on the west side of the railroad and using 25 feet of the 75 feet acquired on the west side of the center line for that purpose. It abandoned the idea of locating the county road on the west side of its track and located it on the east Side and there it has since remained.

Instead of moving the fence along the west side of the then county road and reconstructing it upon a line 75 feet west of the center line of the railroad, it moved it to a point 50 feet west of that center line and reconstructed it along a line 50 feet from that center line, thus fencing up and inclosing a right of way only 100 feet in width through the property of Sim Rains and leaving a strip of the land it had purchased 25 feet wide and 889 feet long outside of the inclosure of its way lands and within the inclosure of Sim Rains' other property. In like manner in removing the dwelling house, it was relocated upon this 25-foot strip instead of upon the property of Sim Rains and as thus relocated the dwelling and fence have since remained.

Sim Rains moved into and occupied the dwelling so relocated and cultivated and used the 25-foot strip along with his other land from the time of the relocation in 1908 until 1914 when he died; then his widow and his son Barney Rains, he having bought out the other heirs of Sim Rains, did so until 1918, when Barney died, leaving his mother, his widow, and his five children in the same house. In 1920 his mother (the widow of Sim Rains) died, and the widow and children of Barney Rains con-

tinued to live there until December 7, 1926, when it was sold under an execution against the children of Barney Rains and bought by the appellant, Neal Rains. It is stipulated that by this deed Neal Rains acquired all the title of Sim Rains and his widow and children and Barney Rains and his widow and children. The dwelling has been unoccupied since 1926, but Neal Rains has cultivated the 25-foot strip along with the remainder of the Sim Rains farm since then. In the meantime the Louisville & Nashville Railroad Company had on April 1, 1913, by deed from it acquired all the property of the Pine Mountain Railroad Company.

The dispute over the 25-foot strip of road arose late in 1929 or early in 1930, when Neal Rains requested the supervisor of the Pine Mountain Branch of the Louisville & Nashville Railroad to take up with the company the question of rebuilding the fence between the right of way and the Sim Rains farm. In preparation for rebuilding this fence, the Sim Rains deed was examined, and apparently for the first time since the execution of the Sim Rains deed in 1906 the railroad discovered 25 feet of the land it had bought was outside of its inclosure and it asked for the possession of the 25-foot strip and that the right of way fence be built along what is called the true line. As Neal Rains and the Louisville & Nashville Railroad Company were unable to agree, it sued him, set up its title, and asked to have it quieted and asked that Neal Rains be enjoined from claiming to own it or any part of it, from trespassing thereon, etc.

Neal Rains pleaded adverse possession of the 25-foot strip and asserted title thereto in himself by virtue thereof. The Louisville & Nashville Railroad Company claims it held this property for a public use and it cites and relies upon the following: In Louisville & N. R. Co. v. Williams, 245 Ky. 466, 53 S. W. (2d) 751, 752, it is said:

> "The right of way of a railroad company is acquired for public use, and possession thereof by others suffered by the railroad company must be deemed permissive and will not support the necessary presumption of a grant, in the absence of positive notice brought home to the railroad company. Thompson v. L. & N. R. Co., 110 Ky. 973, 63 S. W. 42, 23 Ky. Law Rep. 476; Louisville & N. Ry. Co. v.

Hagan, 141 Ky. 20, 131 S. W. 1018, 35 L. R. A. [N. S.] 189; Louisville & N. Ry. Co. v. Childers & Only, 155 Ky. 652, 160 S. W. 260, 48 L. R. A. [N. S.] 903; Louisville & N. R. Co. v. Cornelius, 165 Ky. 132, 176 S. W. 964. Cf. Trustee of Cincinnati Southern Ry. Co. v. Slaughter, 126 Ky. 492, 104 S. W. 291 [31 Ky. Law Rep. 913]."

Louisville & N. R. Co. v. Davidson's Adm'r, 246 Ky. 231, 54 S. W. (2d) 911; City of Grayson v. East Ky. Southern Ry. Co., 250 Ky. 316, 62 S. W. (2d) 1034.

It also cites this from section 246, p. 143 of 2 C. J.: "By the execution and delivery of a deed of land the entire legal interest in the premises vests in the grantee, and if the grantor continues in possession afterward his possession will be that either of tenant or trustee of the grantee. He will be regarded as holding the premises in subserviency to the grantee, and nothing short of an explicit disclaimer of such relation and a notorious assertion of right in himself will be sufficient to change the character of his possession and render it adverse to the grantee."

No rule is better settled than these, but what better notice of disclaimer and assertion of ownership in himself could there be that Sim Rains intended and was intended to hold and claim this property as his own than what was done when the railroad company itself so relocated the fence as to leave the 25-foot strip in dispute inclosed with Sim Rains' other property and moved his house and relocated it upon it.

The judgment is reversed, the court will so modify it as to adjudge Neal Rains the owner of the 25-foot strip inclosed with his other land by the fence built by the railroad company in 1908, and upon which the house was then relocated.